**Burrell Adoption**

*Horace A. Davenport,* for *George Winfield Conyer* and *Beatrice E. Burrell Conyer,* petitioners.

*Philip Salkin,* for objector.

TAXIS, P. J., November 5, 1971.—This matter comes before the court upon petition for adoption filed on February 25, 1969, by George Winfield Conyer and Beatrice E. Burrell Conyer, seeking the adoption of Shawn Emma Burrell, a child born to Mrs. Conyer during her prior marriage to one Douglas Allen Burrell. Petitioners charged the natural father with abandonment for more than six months, he having refused to consent to said adoption. In addition, petitioners alleged that Douglas Allen Burrell is not the natural father of Shawn Emma Burrell and that the consent of the natural father is unnecessary because the child is illegitimate.

The Adoption Act defines abandonment as being conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquish all parental claim to the child, which conduct must be shown to have continued for a period of at least six months: Hunter Adoption Case, 421 Pa. 287; Gunther Adoption Case, 416 Pa. 237. Thus, abandonment is the total and permanent relinquishment by a parent of his or her own flesh and blood: Rettew Adoption Case, 428 Pa. 430. This does not necessarily mean that the abandoning parent must make any formal statement to that effect, that he ignore entirely the child's existence, or that such parent entirely forego any interest in its welfare and its whereabouts. Rather, it means that the parent, by conduct, has intended a termination of that close relationship which nor-

mally exists between parent and child: Hookey Adoption Case, 419 Pa. 583.

Whether a parent has been guilty of abandonment is a question of fact to be determined by the evidence and is largely a matter of intent: Wischmann Adoption Case, 428 Pa. 327. It requires an *intent* to escape parental responsibility and conduct in effectuation of such intent: Hazuka's Case, 345 Pa. 432.

The burden of proof of abandonment is upon the person seeking to adopt the child. Also, because of the finality of the severance, the rights of the parent shall not be terminated unless such abandonment is clearly established by the evidence.

The testimony of Mrs. Conyer and her husband, George W. Conyer, established the following facts: Shawn Emma Burrell was born on January 26, 1965, at which time Mrs. Conyer and Douglas Allen Burrell were married but living apart, having separated in September 1964. Subsequent to the birth of Shawn, specifically, May 3, 1966, the parties were divorced and Mrs. Conyer on July 21, 1968, was married to George W. Conyer. During her entire life, Shawn has lived with Mrs. Conyer. At no time did Douglas Allen Burrell contribute or offer to contribute to this child's support. In addition, even though Mr. Burrell visited the other children of the parties, who were also in Mrs. Conyer's custody, his first effort to visit Shawn was not until March 5, 1968, or three years and one month after her birth, and such visit was prevented by Mrs. Conyer. Thereafter, Mr. Burrell sought visitation rights by way of habeas corpus proceedings, which request, after hearing, was denied.

Standing alone, the foregoing testimony would compel the court to conclude that petitioners have, by clear and satisfactory evidence, met the burden of establishing abandonment. However, on crossexami-

nation, Mrs. Conyer candidly conceded that she consistently refused to allow Mr. Burrell visitation of Shawn from the time of Shawn's birth.

Petitioners have established that the child, Shawn, was neglected by the objecting parent, Douglas Allen Burrell. However, mere neglect does not necessarily constitute abandonment. It must also appear that the parent *intended* to give up the child absolutely, never to claim it again. Thus, to have the effect of abandonment, neglect must be coupled with affirmative acts or declarations on the part of the parent indicating a positive intent to abandon: Rettew Adoption Case, supra.

Assuming arguendo that Mr. Burrell has neglected Shawn and had failed to visit her since her birth, such failure has been explained by the admissions of Mrs. Conyer that any attempted visits by Mr. Burrell *were actively prevented by her*. Cf. Ashton Adoption Case, 374 Pa. 185, at page 199. In addition, while there is no question that Mr. Burrell failed to contribute to the support of Shawn, nevertheless, failure to support, standing alone, is not conclusive of the intention to abandon the child: Hangartner Adoption Case, 407 Pa. 601; Southard Adoption Case, 358 Pa. 386.

By reason of the foregoing, and after full and careful consideration of all evidence and arguments of counsel, this court reluctantly concludes that the petitioners have failed to meet their burden of clearly establishing that Douglas Allen Burrell had, for a period of six months or more, intentionally abandoned his child, Shawn. With regard to the alternative position of petitioners, however, this court concludes that Douglas Allen Burrell is not the natural father of Shawn so that neither his consent nor a finding of abandonment is required.

On February 14, 1968, approximately 14 months

before the adoption hearing, a habeas corpus proceeding was brought by Mr. Burrell to have visitation rights established with regard to Shawn. The matter was subsequently heard in the Court of Common Pleas of this county and an order was entered dismissing Mr. Burrell's petition on the grounds that Mr. Burrell was not the actual father of Shawn and, in the alternative, that even if he were the father, visitation would have a harmful effect upon the child. On appeal, the order was affirmed: Burrell v. Burrell, 213 Pa. Superior Ct. 249.

The record in the adoption proceeding is almost without testimony as to the legitimacy of Shawn. It is clear from the record, however, that petitioners at no time intended to withdraw their allegation of illegitimacy, and the absence of testimony on this issue suggests that counsel for petitioners either was content to permit the issue to rest on the record in the habeas corpus proceeding, or else considered the testimony patently objectionable as testimony of a mother bastardizing a child born during wedlock.

Mrs. Conyer did, in one instance in the adoption proceeding, state in crossexamination that Shawn is not Mr. Burrell's child. In the habeas corpus proceeding, Mrs. Conyer had testified at length that Mr. Burrell is not the father of Shawn and it is clear from the record in that proceeding that one of the precise issues before the court was whether Mr. Burrell is the father of Shawn.

The issue before this court is whether or not the legitimacy of Shawn has already been determined under the doctrine of collateral estoppel. It is clear that where parties to an action have had an opportunity to appear and be heard in a prior proceeding involving the same subject matter, all issues of fact which were actually adjudicated in the former action and essential

to the judgment therein are concluded as between the parties even though the causes of action in the two proceedings are not identical: Walker v. Ohio River Co., 428 Pa. 552.

Under this doctrine, by reason of the finding of the Court of Common Pleas of this county, as affirmed by the Superior Court, that Mr. Burrell is not the natural father of Shawn, this court concludes that neither the consent of Mr. Burrell nor a finding of abandonment of Shawn by Mr. Burrell is required.

The court notes that petitioners have filed a petition for rehearing because the Act of July 24, 1970, P. L. 620, 1 PS §101, et seq., amended the adoption laws. Petitioners clearly refer to section 313 of the Adoption Act which provides, in part, as follows:

". . . The natural mother shall be a competent witness as to whether the presumptive father is the natural father of the child. . . . "

Petitioners wish to avail themselves of the opportunity to testify that Mr. Burrell is not the father of Shawn. However, the new Adoption Act provides, at section 602, with regard to pending proceedings, as follows:

"(e) This act shall apply to all proceedings begun on or after January 1, 1971.

"(b) Adoption proceedings in progress and not completed before the effective date of this act may be amended after January 1, 1971 to conform to this act if the parties in the particular case shall so agree. Otherwise, such proceedings shall be carried to their conclusion under the (former Adoption Act)."

It is, therefore, questionable whether the new Adoption Act would be applicable on rehearing. In light of the foregoing findings of the court, however, it is not necessary to consider the petition for rehearing.

## FINAL DECREE

And now, November 5, 1971, upon consideration of the within petition and of the hearing had thereon, and the court having made an investigation to verify the statements of the petition and other facts to give the court full knowledge as to the desirability of the proposed adoption, the court, being satisfied, finds that the statements made in the petition are true, that the welfare of the person proposed to be adopted will be promoted by this adoption, and that all requirements of the Act of April 4, 1925, P. L. 127, as amended, have been complied with; and directs that Shawn Emma Burrell, the person proposed to be adopted, shall have all the rights of a child and heir of George Winfield Conyer and Beatrice E. Burrell Conyer, the adopting parents, and shall be subject to all the duties of such child; and shall hereafter assume the name of Shawn Emma Conyer.