510 A.2d 1239

**Walter F. RIESS, Jr., Appellant**

v.

**Theresa DE LUCA.**

Superior Court of Pennsylvania.

Argued June 4, 1985.

Filed June 6, 1986.

Richard A. Mitchell, Media, for appellant.

Heather K. Douglass, Drexel Hill, for appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

BROSKY, Judge:

This appeal is from the order requiring appellee to place $10 a week into a bank account for the educational needs of the parties' two minor children. Appellant contends that: (1) the trial court erred in refusing to follow the guidelines for support that have been set forth by the Pennsylvania Supreme Court; (2) the trial court erred in questioning

appellant's candor and finding that appellant was attempting to punish appellee for exercising her right of visitation; (3) the record contains ex parte documents prejudicial to appellant. We agree with appellant's first contention and, accordingly, vacate the order of the trial court and remand this case for a recalculation of the parties' support obligations.

The parties to this action were married in January of 1970. Two children were born of this marriage, Jacquelyn, born July 29, 1971, and Michelle Lynn, born September 7, 1974. The parties were divorced in September of 1981, at which time they both resided in New Jersey. Prior to the entry of the divorce decree, the Superior Court of Burlington County, New Jersey, had issued an order awarding custody of the children to appellant. As part of the divorce decree, the New Jersey court ordered appellee to put $10 per week into a bank account for the educational needs of the children.

Subsequently, the parties moved to Pennsylvania and, in June of 1982, appellant filed a support action in Philadelphia County. This action was dismissed for reasons not revealed by the record.

On March 2, 1984, appellant filed a complaint for support in Delaware County. A hearing was then held before a master who recommended the entry of a support order in the amount of $65 per week. Following entry of the recommended order, appellee filed a timely appeal, and a hearing *de novo* was held before the trial court on June 13, 1984. Subsequently, appellee petitioned for a rehearing in order to have the opportunity to introduce additional evidence in light of the Supreme Court's opinion in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). A rehearing was held on November 1, 1984 and, on December 19, 1984, the lower court entered an order requiring appellee to pay $10 per week into a bank account for the educational needs of the children. This appeal timely followed.

Appellant first argues that the court below erred in refusing to follow the guidelines set forth in *Melzer*, supra,

for the calculation of a parent's support obligation. We agree.

In *Melzer*, our Supreme Court set forth uniform guidelines for the calculation of child support. It held that in making such a calculation, the hearing court must determine: (1) the reasonable expense of raising the children involved; and (2) the respective abilities of the parents to support their children. After it has made these determinations, the court is to calculate each parent's total support obligation in accordance with the formula set forth in *Melzer*. Finally, once each parent's total support obligation has been defined, the hearing court must determine what portion of that obligation may be offset by support provided directly to the children. The total support obligation may be offset only by such voluntary expenditures as actually satisfy the obligation of reasonable and necessary support. *Id.* Although the figure thus arrived at for the amount of support which must be satisfied by way of support payments to the other parent is not required by *Melzer* to be mechanically adhered to by the hearing court, it must be determined and used by the court as a framework for its decision.

In the instant case, the court below made none of the determinations mandated by *Melzer*. We must summarily reject appellee's argument that the hearing court did, in fact, apply *Melzer*, but that its statement that "we are convinced that the Respondent [appellee] is paying her fair share towards the support of the children" was equivalent to a finding that she had no ability to pay any amount in addition to the amounts she was already paying. We are hardly persuaded that the hearing court's conclusory statement that appellee was paying her fair share was equivalent to a finding that her income available for support, as defined in *Melzer*, was zero. Moreover, appellee's argument flies in the face of the trial court's express statement in its opinion that:

We are not unmindful of the recent Superior [sic] Court decision of *Melzer vs Witsberger*, 480 A.2d 991, [505] Pa.

[462] (1984). However, we do not feel that the rationale is approximate [sic] here. First, there [sic] is a Petition for an increase in support as there curently exists a New Jersey Court Order which is being obeyed. Secondly, the rationale of *Melzer*, supra, would not take into consideration the $35.00 per week that the mother currently contributes, nor would it include the $10.00 per week Order currently being paid.[1]

Since the court below did not follow the dictates of *Melzer*, we will remand this case for the court to make determinations necessary to an application of the *Melzer* formula,[2] to determine whether and by how much the support obligation arrived at by that formula should be offset by appellee's voluntary contributions, and to use the amount of support thus arrived at as a framework for its decision. It is so ordered.[3]

Order vacated and case remanded for proceedings consistent with this Opinion.

TAMILIA, J., files a concurring opinion.

TAMILIA, Judge, concurring:

I concur in the result, agreeing that the court failed to follow the guidelines established in *Melzer v. Witsberger*,

1. While we believe *Melzer* would apply to the instant case even if the order of the New Jersey court were considered to be a support order, our review of the record indicates that there is not sufficient support in the record for a finding that the New Jersey order requiring appellee to put $10 per week into a bank account for the educational needs of the children was, in fact, an order which determined the support obligations of the parties. We would also reiterate the point that *Melzer* does allow credit to be given for a parent's voluntary contributions as long as those expenditures satisfy the obligation of reasonable and necessary support. We note that the trial court made no findings as to whether appellee's expenditures satisfied this criterion.

2. In determining appellant's ability to support his children, i.e., his net income less his reasonable living expenses, the trial court should be aware that its finding that appellant earns $43,000 a year and its finding that appellant earns $1,989 every two weeks are inconsistent.

3. In light of our disposition, we do not believe it is necessary to address issues (2) and (3). However, as to issue (2), it would appear that the trial court made a proper credibility determination.

505 Pa. 462, 480 A.2d 991 (1984). Although a remand is appropriate, in light of the lower court's failure to understand the applicability of *Melzer* to the present facts, I think it would be instructive to both fully explain our application of the *Melzer* guidelines to the specifics of this case and discuss the resolution of problem areas where they arise.

The premise on which a determination of support obligation rests is that parents must share, based on, inter alia, their respective resources, the expenses of raising their children. *Melzer, supra.* The obvious difficulty lies in examining all pertinent factors to arrive at a number appropriate and equitable to payor/parent and to the child.

In this support proceeding, the only amounts that have been established of record, upon which there can be a determination as to the father's ability to pay, according to the *Melzer* guidelines, are gross income of $43,000 yearly and net income of $1,989 monthly. The income of appellant's wife ($5,200 per year net), must likewise be considered, providing a gross income of $48,200 upon which to calculate support as to the father's share. The amount of $27,000 has been established as the mother's gross income for support purposes.

Support obligations are not, however, based on gross income, but must be determined from income available for support, which is the net income less the reasonable living expenses of the parents.[1]

Another fact which must be established is the needs of the children. Failing to establish a dollar amount for the childrens' needs, any attempt to apply the *Melzer* formula would be fruitless, and the final determination of the respective support obligations would be without a rational

---

**1.** The Melzer formula provides:

A = amount available to parent A; B = amount available to parent B

$$\frac{A}{A+B} \times \text{support needs} = \frac{\text{total support}}{\text{obligation of A}} - \frac{\text{in kind}}{\text{contribution}} = \frac{\text{actual support}}{\text{obligation of A}}$$

$$\frac{B}{A+B} \times \text{support needs} = \frac{\text{total support}}{\text{obligation of B}} - \frac{\text{in kind}}{\text{contribution}} = \frac{\text{actual support}}{\text{obligation of B}}$$

basis. In this case, the needs, as expressed by the father's figures, amounted to $222 per week. I believe the figure of $222 to be somewhat inflated. The share attributed to a ten year old and a thirteen year old for the mortgage payment ($92.30 per week), utilities ($13.45 per week), automobile ($20 per week), appear out of line with the portion which would be actually consumed by the children. However, the parties agreed this was a reasonable estimate of the needs of the children and because of the substantial income available to the parties and their standard of living, I would accept that figure.

A calculation of the support contribution from the mother, if she has the ability to pay, should be based on reasonable extrapolation of the $222 amount. A $143.83 monthly expenditure for the children, alleged by the mother/appellee, was regarded by the court as her fair share of their maintenance, given the disparity in the parties' incomes. In addition the mother alleged an amount of $40 per month for gifts for the children and a $10 per week contribution to an educational fund based on a New Jersey Court Order. The mother's testimony indicated she contributed this amount primarily during the period of six weeks partial custody during the summer and on weekly visitations.

The $143.83 and $40 per month for gifts paid by appellee, which is in effect a voluntary contribution along with the $10 per week to the educational fund, do not meet the requirement that the custodial parent have a predictable and consistent flow of (supplementary) revenue. The determination necessary concerning the offset of $143.83 and $40 expended monthly for the children, is whether these expenditures actually provide for necessaries. The lower court failed to make this finding. While *Melzer* does acknowledge that a portion of a parent's support obligation may be satisfied by the provision of support directly to the children, here, the total contribution by appellee would be provided on a direct basis. The trial court abused its discretion in finding that expenditures of this type totally satisfied appellee's support obligation.

Although appellee claims that the dispersion of these sums is necessary at least in part because of appellant's derelictions in his care of the children, the question of if, or how well he is meeting their needs is one to be resolved in a custody proceeding.

With respect to the weekly payment of $10 for the educational needs of the children ordered by the New Jersey Court, it is apparent that the trial judge was honoring the intention of the New Jersey court. However, since both parties now reside in Pennsylvania, New Jersey has no further interest in or control over these matters. Further, it is preferable that the money be readily available for the children's immediate use, as such accumulations as the Order contemplates are, like appellee's other "children's expenses", not an acceptable substitute for support.

It is axiomatic that a support award must be neither confiscatory nor punitive, *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974); *Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764 (1985); *Shapera v. Levitt,* 260 Pa.Super. 447, 394 A.2d 1011 (1978), and that allowance for reasonable living expenses must not be overlooked. *Melzer supra.* On the income established on the record in court, applying the *Melzer* formula to obtain the ratio each parent should contribute, I would conclude the following.

The yearly net income of the father is $23,868 as established from the figure of $1,989 per month testified to on the record (incorrectly stated as bi-weekly which would have provided a net income of $51,714, the amount erroneously concluded by the trial judge). Adding his wife's net income of $5,200, I derive a total net income of $29,068. The second wife's income is included as she appears to be voluntarily contributing to the household expenses, and on balance, appellant is paying the major share of those expenses. *See Roberts v. Bockin,* 315 Pa.Super. 52, 461 A.2d 630 (1983); *Astillero v. Shotwell,* 294 Pa.Super. 222, 439 A.2d 831 (1982).

The yearly net income of the mother, allowing one-third for deductions from a gross salary of $27,000, equals $18,-

000. From the expense statements provided in evidence by the parties, excluding any expenses attributable to the children from both statements and disallowing amounts that are discretionary and appearing to be excessive ($150 for father per month—$245 for mother per month),[2] the father's monthly expenses (including those for his present wife) total $1,095, the mother's, $1,072.

For the father subtracting $1,095 from his net income of $2,422 per month leaves $1,327 available for support. Subtracting $1,072 from $1,500 net income of the mother, leaves $428 available for support. Applying the *Melzer* guidelines, I arrive at an equation as follows:

For the appellee's child support obligation:

$$\frac{\$428\ (M)}{\$428(M)\ +\ \$1327(F)} \times \begin{array}{c}(\text{needs}\\ \$222\\ \text{weekly})\end{array} = \$\ 54.14$$

For the appellant's obligation:

$$\frac{\$1327\ (F)}{\$428(M)\ +\ \$1327(F)} \times \begin{array}{c}(\text{needs}\\ \$222\\ \text{weekly})\end{array} = \$167.86$$

The *Melzer* case does not require mechanical adherence to the formula and although it is a basic guide, there are other considerations which cannot be ignored. In this case, while the appellant's wife's income should be considered in determining the amount available to maintain that household, *Melzer, supra,* where, as here it has been included in toto, some consideration must be given to the fact that she is not legally responsible for the children's support. *Common-*

**2.** Appellant

| | Reduced |
|---|---|
| Car expense | $150 to $100 = $ 50 |
| Entertainment | $100 to $ 50 = $ 50 |
| Gifts—Miscellaneous | $150 to $100 = $ 50 |
| | Total $150 |

Appellee

| | Reduced |
|---|---|
| Legal fees | $200 to $100 = $100 |
| Car repairs | $120 to $ 50 = $ 70 |
| House repairs | $ 43 to $ 18 = $ 25 |
| Food/supplies | $260 to $210 = $ 50 |
| | Total $245 |

*wealth ex rel. Hagerty v. Eyster,* 286 Pa.Super. 562, 429 A.2d 665 (1981); Cf. *Roberts* and *Astillero, supra.* Also, the mother's expenses are virtually equal to those of the father and it appears she can exercise greater frugality without sacrificing her standard of living thereby permitting her to share to a greater extent in the support of her children. For these reasons, while the strict formula would require that she contribute $54 per week to her childrens' support, I believe a more just and reasonable contribution would be $60 per week.[3] The amount of $85 per week suggested by appellant is based on gross income without consideration of the appellant's wife's income and the respective expenses of the parties and is legally unsustainable. I recognize that six weeks partial custody during the summer will shift the burden considerably to support the children during that period, while certain underlying expenses continue unabated with the father. I would, therefore, set the order at $30 per week for the six week period.

I think this application of the *Melzer* guidelines to the facts of the present case should assist the lower court in its understanding of the process to be employed when dealing with a petition for support. Flexibility exists in the final formulation of the support Order where factors relevant to the case at hand are evaluated to determine if adjustments should be made to the support obligation as calculated under the *Melzer* formula.

I think it is also important to note the enactment of H.B. 98 as amended on October 8, 1985 effective January 6, 1986, which amended Title 23 Pa.C.S.A., specifically adding § 4322 which provides:

§ 4322. Support guidelines.

The courts of common pleas shall develop guidelines for child and spousal support so that persons similarly situated shall be treated similarly. The guidelines shall

---

3. This order is actually only $4.31 per week more than appellee alleges she is presently paying for the children if we consider the $143 monthly (in-kind support), $40 monthly (gifts) and $10 weekly (educational fund). This averages $52.23 per week, whereas our order comes to $56.54 on an average weekly basis.

be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guidelines shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

On remand I would instruct the lower court that it should incorporate the considerations set forth in the statute along with the *Melzer* guidelines in formulating its support Order.

The bench and bar should also be alerted to the passage of this legislation and the necessity of its incorporation into support proceedings. The impact of the new legislation on *Melzer* will only become apparent after the courts have had an opportunity to develop the guidelines called for in the statute and apply them to specific situations.